```
                                                          FILED
         UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF ALABAMA
              NORTHEASTERN DIVISION                    OCT 23 PM 3:01

                                                      U.S. DISTRICT COURT
                                                       N.D. OF ALABAMA
```

MICKY GAINES, AND HUNTER GAINES, )
BY AND THROUGH HIS NEXT FRIEND, )
MICKY GAINES, )
                                             )
      Plaintiffs, )
                                             )
vs. )   Civil Action No. CV-00-S-785-NE
                                             )
NEW YORK LIFE INSURANCE COMPANY )
AND JOHN BOOZER, )
                                            )
      Defendants. )   **ENTERED** OCT 23 2001

## MEMORANDUM OPINION

This action is before the court on defendant New York Life Insurance Company's renewed motion for summary judgment (doc. no. 24). Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that the motion is due to be denied.

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).



> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

## II. FACTUAL BACKGROUND

This dispute involves whether plaintiffs Micky and Hunter Gaines are entitled to proceeds from the life insurance policy of Randall Gaines, deceased, who was the husband of Micky Gaines and the father of Hunter Gaines. Randall died on February 22, 1998, in a scuba diving accident in the Bahamas.[1]

New York Life Insurance Company ("New York Life") issued a $200,000 Increasing Premium Term policy insuring the life of Randall Gaines, on May 6, 1983.[2] On that date, Randall was married to Constance Gaines, and two daughters were born of that prior marital relationship: Sutton and Barrett Gaines. Constance was named as the primary beneficiary of the policy, and "the children born of insured's marriage" to Constance were named as the secondary beneficiaries.[3] Constance and Randall subsequently divorced, however, and on October 2, 1989, Randall submitted a change of beneficiary form to New York Life, naming his daughters, Sutton and Barrett Gaines,

---

[1] Deposition of Micky Gaines, at 41-42.
[2] Plaintiffs' Evidentiary Materials (doc. no. 16), Ex. 3, at 1.
[3] *Id.* at 5.

2

as the primary beneficiaries. New York Life recorded the change on October 10, 1989.[4]

Randall and Micky married on February 25, 1995.[5] Their son, Hunter, was born on September 25, 1995.[6]

Following Hunter's birth, Randall and Micky discussed adding Micky and Hunter as beneficiaries of Randall's New York Life insurance policy.[7] Randall first attempted to increase the face value of another life insurance policy that he held with Liberty National Life Insurance Company but, following a required medical examination which revealed that he had diabetes and high blood pressure, he was unable to do so.[8] He next attempted to purchase another policy from ALFA Insurance Company, but was declined.[9] Consequently, Randall and Micky again discussed adding her and Hunter as beneficiaries to the New York Life policy, in addition to Sutton and Barrett.[10] Randall told Micky that he intended to request a change of beneficiary form from New York Life.[11] He told Micky that he would do it on the anniversary date of his policy, which was his birthday, June 12.[12]

Around that time, Melissa Ponder, who worked with Randall at his pharmacy, telephoned Micky and requested that she supply birth dates and social security numbers for herself and Hunter, so that Ponder could assist Randall in completing the change of beneficiary form.[13]

---

[4] *Id.* at 3.
[5] Deposition of Micky Gaines, at 7.
[6] *Id.* at 9.
[7] *Id.* at 17.
[8] *Id.*
[9] *Id.* at 19.
[10] *Id.* at 20.
[11] *Id.* at 21.
[12] *Id.* at 16.
[13] *Id.* at 23-24.

3

The New York Life policy gave the insured the right to change beneficiaries as follows:

> While the insured is living, you can change a beneficiary in a notice you sign which gives us the facts that we need.
>
> When we record a change, it will take effect as of the date you signed the notice, subject to any payment we made or action we took before recording the change.[14]

The instructions on the change of beneficiary form were as follows:

> Even if there is anything in the policy (or policies) that states otherwise, the person having the right to change a beneficiary can do so while the Insured/Annuitant is living by using the signed notice, furnishing the necessary information to the Company/Corporation for endorsement. An endorsement will be returned to the Owner to be kept with the policy after the change has been recorded. When the Company/Corporation records the change, it will take effect as of the date this notice was signed, subject to any payment made or other action taken by the Company/Corporation.[15]

Ponder had begun working for Randall as a pharmacy technician in 1993.[16] At the time, Randall owned Medical Center Pharmacy, where he worked as a pharmacist.[17] After the pharmacy's bookkeeper, Pam Mayo, resigned in 1995, Ponder took over her duties, including paying the bills of the business.[18] Ponder also handled Randall's personal affairs, including paying his bills and making medical appointments for him.

Ponder testified that Randall had discussed his desire to add Micky and Hunter to his New York Life policy as beneficiaries. She said that, after Hunter was born, she looked up the telephone number for New York Life, and gave it to Randall so that he could request the change of beneficiary

---

[14]Affidavit of Steven L. Nelson, Ex. 1, at 4.

[15]Deposition of Micky Gaines, Ex. 2.

[16]Deposition of Melissa Ponder (doc. no. 25), at 14.

[17]*Id.* at 15. The pharmacy was sold to CVS in 1997, but Randall and Ponder continued to work there. *Id.* at 35.

[18]*Id.* at 19-22.

4

form.[19] Randall requested the form in May of 1996,[20] and New York Life's records indicate that the form was sent to him on May 28, 1996.[21] He asked Ponder to telephone Micky to obtain the social security numbers for Hunter and Micky.[22] Ponder did so, and provided the information to him. Randall completed the form and signed it.[23] After he completed the form, he placed the envelope in a wire basket that was used as the pharmacy office mailbox.[24] Neither Randall nor Ponder made a copy of the form before placing it in the mailbox. The mailman, "Charles," collected the mail from the wire basket every day.[25] New York Life has no record of receiving the change of beneficiary form, however.

Randall and Micky had planned to consult an estate planner during January of 1998. Due to inclement weather, they were unable to keep their appointment. In preparation for the meeting, Micky and Randall completed a background information worksheet in December of 1997. In the section entitled "Miscellaneous Assets," Randall listed three life insurance policies: "Liberty National," "New York Life," and "Revco." In the section entitled "Life Insurance Summary," Randall listed Sutton, Barrett, Micky, and Hunter as beneficiaries of the New York Life policy.[26]

Shortly after Randall's death, Micky contacted New York Life to request claim forms. The New York Life representative informed Micky that there was no record of a change of beneficiary form adding Hunter and Micky as additional beneficiaries of Randall's policy.[27] Micky asked the

---

[19] *Id.* at 30.
[20] *Id.*
[21] Deposition of Micky Gaines, Ex. 2.
[22] *Id.* at 40.
[23] *Id.*
[24] *Id.* at 41.
[25] Ponder does not recall actually seeing Charles collect the mail on that particular day. *Id.* at 59.
[26] *Id.*, Ex. 1.
[27] *Id.* at 27.

representative to check to make sure, because she believed that her husband had submitted a change of beneficiary form. The representative told her that there was a record that Randall requested the form, but there was no record of New York Life's receipt of the form.[28]

After speaking with the New York Life representative, Micky contacted Ponder.[29] Micky asked Ponder to help her look for a will and other documents in the pharmacy's safe.[30] Micky asked Ponder about the life insurance policy, and Ponder confirmed that Randall had added Micky and Hunter as beneficiaries.[31] They were unable to locate a will.

A New York Life representative, Sybil Norton, wrote to Micky Gaines on March 6, 1998. The letter stated the following:

> On behalf of New York Life, I extend our sincere sympathy on the loss of your husband.
>
> To consider the claim, we will need a certified copy of the death certificate for the insured. The enclosed claimant's statements should be completed by Sutton L. and Barrett L. Gaines/children. Additional information can be found on the claimant's statements. We will also need newspaper articles concerning the accident.
>
> I have enclosed a return envelope for your convenience.
>
> As soon as these requirements are received, we will be able to consider the claim or advise you if additional information is needed. If I can be of further service, please let me know.[32]

On March 27, 1998, Micky's attorney, Margaret L. Lathum, wrote a letter to Norton, stating:

> Please be advised that I represent the Estate of Randall W. Gaines. The surviving spouse, Ms. Micky Gaines, has been appointed as aministratrix [sic] of his estate, a copy of Letters of Administration enclosed.

---

[28] *Id.* at 43.
[29] *Id.* at 49.
[30] *Id.* at 50.
[31] *Id.* at 52.
[32] *Id.*, Ex. 3.

6

> It is my understanding that in May, 1996, Mr. Gaines changed the beneficiary on his policy to be his wife as first beneficiary and the children, equally, as second beneficiaries.[33] *I am having the claim form signed by the spouse.* In the interim, please send me a complete copy of all records you have on file regarding said policy, including the policy, the applications forms, changes in application forms or beneficiary forms, and any and all other information on file.[34]

Micky does not specifically recall completing a claim form.[35] In any event, Norton replied to Lathum's letter on June 22, 1998, saying:

> This is in further reference to your letter of March 27, 1998 and my telephone conversation with Linda in your office on April 1, 1998.
>
> According to our records the beneficiaries on this policy are Sutton L. Gaines and Barrett L. Gaines, children of the insured. I am enclosing a copy of this change of beneficiary form dated October 22, 1989.[36]
>
> To consider the claim, we will need a certified copy of the death certificate for the insured. The enclosed claimant's statements should be completed by Sutton L. and Barrett L. Gaines/children. Additional information can be found on the claimant's statements. We will also need newspaper articles concerning the accident.
>
> I have enclosed a return envelope for your convenience.
>
> As soon as these requirements are received, we will be able to consider the claim or advise you if additional information is needed. If I can be of further service, please let me know.[37]

On August 31, 1998, Norton again wrote to Lathum:

> This is to remind you that we have not received the previously requested claim requirements as outlined in our previous letter, copy attached. In the event this form may have been lost, I am enclosing another set which should be completed and returned to us.

---

[33] This is inconsistent with Micky's stated understanding that the proceeds were to be divided equally among Sutton, Barrett, Hunter, and herself.

[34] *Id.*, Ex. 4 (emphasis supplied).

[35] *Id.* at 46-47.

[36] This date is incorrect. Randall signed the form on October 2, 1989, New York Life received it on October 9, 1989, and recorded the request on October 10, 1989.

[37] *Id.*, Ex. 5.

7

I have enclosed a return envelope for your convenience.

As soon as these requirements are received, we will be able to consider the claim or advise you if additional information is needed. If I can be of further service, please call me at 1-800-695-5645.[38]

New York Life's records indicate that Micky called Norton, at New York Life's Atlanta Service Center, on November 9, 1998. Norton's notes state:

Spoke to Micky Gaines and she said attorney Margaret Lathum is no longer handling this claim. The case is now being handled by Jeff McLaughlin, who will be calling me. He is getting all of the paper work from attorney Lathum. She wanted to know if we had rec'd anything on the case and she knows claim is to be paid to children.[39]

Sutton completed a claim form on December 14, 1998, and Constance, Randall's former wife, signed Barrett's claim form on December 18, 1998.[40] New York Life has no record of receiving a claim form from Micky.[41] New York Life paid the proceeds of the policy to Sutton and Barrett on December 23, 1998, ten months after Randall's death.[42]

### III. DISCUSSION

This controversy turns on the interpretation of an insurance contract. Defendant is a New York corporation, plaintiffs are citizens of the State of Alabama, and the action was commenced in this district. Neither party has addressed which state's law applies. The Supreme Court commands that, where diversity of citizenship is the basis of jurisdiction, the district court is to apply the choice-of-law rules of the state in which it sits.[43] *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941).

---

[38] Deposition of Micky Gaines, Ex. 6.
[39] Plaintiffs' Evidentiary Materials (doc. no. 16), Ex. 3, at 15.
[40] *Id.* at 11-14.
[41] *Id.* at 1.
[42] *Id.* at 29.
[43] The insurance policy did not contain a choice of law provision.

Alabama's choice of law rule provides that "the law of the state wherein the contract was executed is determinative of the rights and liabilities of the parties to the contract." *Harrison v. Insurance Company of North America,* 318 So. 2d 253, 257 (Ala. 1975) (citing *Furst & Thomas v. Sandlin,* 208 Ala. 490, 94 So. 740 (1922)). "In the context of insurance cases, the court is obliged to apply the laws of the state where the last act is 'receipt and acceptance' of the insurance policy." *American Motorists Insurance Company v. Southern Security Life Insurance Company,* 80 F. Supp. 2d 1280, 1282 (M.D. Ala. 2000) (citing *Brown Machine Works & Supply, Inc. v. Insurance Co. of North America, Inc.,* 951 F. Supp. 988 (M.D. Ala. 1996)); *see also Industrial Chemical & Fiberglass Corp. v. North River Insurance Company,* 908 F.2d 825, 829 n.3 (11th Cir. 1990) (under Alabama's choice of law rule, the court determined that the receipt and acceptance of the policies by the insured, the last act necessary to the policies' execution, occurred in New York). Alabama Code § 27-14-19(a) (1975) (1998 Replacement Volume) requires that,

> [s]ubject to the insurer's requirements as to payment of premium, every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable time after its issuance, except where a condition required by the insurer has not been met by the insured.

Section 27-14-22 provides "[a]ll contracts of insurance, the application for which is taken within this state, shall be deemed to have been made within this state and subject to the laws thereof."

Here, the application for the New York Life policy was taken in Alabama.[44] The application itself provides "[t]o put a policy issued in response to this application in force, the policy must be delivered to the Applicant and the full first premium paid while all persons to be covered are

---

[44] The application was "[d]ated at Guntersville[, Alabama] on May 6, 1983," and was signed by an agent. Doc. no. 16, Ex. 3, at 93.

living."[45] The policy was delivered to Randall in Alabama.[46] Thus, under Alabama law, the court must apply the substantive law of Alabama to this dispute.

New York Life contends that the proceeds of Randall's life insurance policy were properly paid to the only beneficiaries of which New York Life had a record, and the only individuals from whom claim forms were received — Sutton and Barrett Gaines. In opposition to New York Life's motion for summary judgment, plaintiffs contend that New York Life had notice of Micky and Hunter's claim to the proceeds of the policy by virtue of Micky's telephone calls to a New York Life representative shortly after Randall's death, and, Micky's attorney's letter asserting that Randall had changed the beneficiaries of the policy.

Alabama Code § 27-14-24, entitled "Effect of Payments," provides that

> [w]henever the proceeds of, or payments under, a life or disability insurance policy or annuity contract, heretofore or hereafter issued, become payable in accordance with the terms of such policy or contract, or the exercise of any right or privilege thereunder, and the insurer makes payment thereof in accordance with the terms of the policy or contract or in accordance with any written assignment thereof, the person then designated in the policy or contract, or by such assignment, as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor; and such payments shall fully discharge the insurer from all claims under the policy or contract, *unless, before payment is made, the insurer has received at its home office written notice by, or on behalf of, some other person that such other person claims to be entitled to such payment or some interest in the policy or contract.* [Emphasis supplied.]

Here, New York Life's liability cannot be discharged by its payment of the proceeds to Sutton and Barrett Gaines, because New York Life had written notice, virtually contemporaneously with Randall's death, that Micky and Hunter Gaines claimed to be additional beneficiaries of the policy.

---

[45]*Id.*

[46]Randall apparently lost the original policy and, at his request, New York Life sent him a certificate of insurance in lieu of a replacement policy. *Id.* at 70.

10

Upon notification of plaintiffs' potential adverse claim, in order to protect itself from double liability, New York Life would have been prudent to interplead the proceeds, to allow a court of competent jurisdiction to determine the proper beneficiaries. Addressing a case involving a claim for the proceeds of an insurance policy by a beneficiary who had not been ruled out as a suspect in the deceased insured's death, and the competing claim of a secondary beneficiary, the Middle District of Alabama has observed that, "[a]lthough the Supreme Court of Alabama has not considered these precise issues, other state and federal courts to address these issues have concluded that under these circumstances an insurance company has a duty to clothe its disbursement of the proceeds of the policy with the protection of a judicial determination." *Monumental Life Insurance Co. v. Lyons-Neder*, 140 F. Supp. 2d 1265, 1273 (M.D. Ala. 2001). The same is true here, where New York Life had notice of competing claims.

## IV. CONCLUSION

Because New York Life had notice of Micky and Hunter Gaines' claims to the proceeds of Randall's insurance policy before its payment to Sutton and Barrett Gaines, its motion for summary judgment is due to be denied. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this **23rd** day of October, 2001.

United States District Judge